## MAGEE v. CHILDERS.

1. The act of 1833, which requires the officer taking a bond on the levy of an attachment, in the event of its condition being forfeited, to indorse the fact on the bond, is not so imperative in its requirements, as to subject the officer to a judgment on motion, unless he was informed that a bond was taken and lodged in the clerk's office; and even after such information given, he will be allowed a reasonable time to make the indorsement.

WRIT of error to the Circuit Court of Mobile.

From the record in this case, it appears that the defendant in error, on the 14th September, 1836, caused an attachment to be issued against the estate of Nelson Phillips, returnable to the circuit court of Mobile, for the recovery of a promissory note for "one hundred and forty-one 25-100 dollars, due sixty days after the 16th August, 1836." This attachment was placed in the hands of T. L. Toulmin, then sheriff of Mobile county, on the day on which it issued, who, on the same day, levied it on a negro woman named Anna. On the same day, the defendant in attachment executed a bond, with Archibald Campbell as his surety; conditioned, that if he was cast in the action, that he should return the specific property, so attached, to the proper officer, or pay and satisfy the judgment that should be rendered against him. Afterwards a judgment was rendered against Phillips for one hundred and forty-two 19-100 dollars, besides costs of suit. On the 10th January, 1837, a *fieri facias* was issued on this judgment, and placed in the hands of the plaintiff in error, who was then sheriff of Mobile, which he returned, "no property found."

At the term of the circuit court holden in the spring of the year 1843, the plaintiff in the judgment moved for a judgment against Magee, as sheriff, for the failure by him to endorse on the replevy bond executed by Phillips and his surety, that the same was forfeited—having first given five days' notice of the time when the motion would be made. From a bill of exceptions, sealed at the hearing of the motion, it appears that the bond, when taken, was, with the attachment, returned to the clerk's office, where it re-

Magee v. Childers.

mained until about the 14th June, 1837, when it was placed in Magee's hands, who endorsed it as follows:

" By the request of Robert G. Gordon, I demanded the negro named in the within bond of Archibald Campbell, the security to this bond—and the said negro was not given up.    June 14th, 1837.                              Wm. Magee, Sh'ff M. C."

That it was not shown or handed to Magee upon the determination of the suit, or when the execution was issued.   It was further proved, that it had been the invariable practice in proceedings of the kind, for the clerk, or plaintiff's counsel, to hand the sheriff the bond when the execution issued, and for the sheriff thereupon to make a demand, and enter a forfeiture of the same, if the property was not delivered according to the condition. Notwithstanding these facts were shown to the court, a judgment was rendered against the sheriff, pursuant to the motion.

Lesesne, for the plaintiff in error.

COLLIER, C. J.—The act of 1812, in connection with that of 1829, enacts, that, on the forfeiture of any bond given to a sheriff or coroner for the forthcoming of property levied on by him in virtue of an execution, it shall be his duty to return the bond and execution within ten days thereafter, to the clerk of the court from which it issued, with the necessary endorsement thereon of forfeiture.   And if he shall fail to comply with the provisions of the act in this respect, he shall, upon five days' notice, be liable to the motion of the plaintiff in execution, to be made before the court from which the execution issued; and, upon the default of the sheriff or coroner being shown, the court shall enter judgment against him, and such of his sureties as shall have had the notice prescribed, for the sum due on the execution, with ten per cent. damages, and all costs.   [Clay's Dig. 215, sec. 73.]   By the statute of 1828, it is provided, where a claim is interposed to property levied on by execution, and a trial had, it shall be the duty of the jury, in all cases, when they find the property subject to the execution, to find the value of each article separately; and if the claimant shall fail to deliver the same, or any part thereof, when required by the sheriff, it shall be the duty of the sheriff, to go to the clerk and endorse such failure on the bond which he has returned, with a copy of the execution.   Whereupon, the

bond shall have the force and effect of a judgment, and execution shall issue against the claimant and his sureties, for the value of the property not delivered, with interest from the date of the verdict. [Clay's Dig. 213, § 64.] The attachment law of 1833 directs, that all replevin bonds, or bonds for the trial of the right of property, taken on the levy of an attachment, shall be lodged with the clerk of the court to which the process is returnable; and should there be any forfeiture of the condition of such bond, the officer taking the same shall forthwith enter thereon the necessary endorsement of forfeiture; and the clerk shall immediately issue execution on the same against all the obligors therein: which duties of clerks and other officers shall be performed under all the penalties and responsibilities prescribed in cases of the forfeiture of forthcoming bonds, and bonds for the trial of the right of property in other cases: *Provided*, That, for satisfactory cause shown, any of the judges may supersede such execution, either wholly or in part, &c. [Clay's Dig. 57, sec. 11.]

In respect to a forthcoming bond, it is retained by the officer levying the execution, and the appropriate return thereon, if its condition has not been complied with, is, that it is forfeited. If property, to which a claim has been asserted, has been adjudged liable to the satisfaction of the plaintiff's execution, a mandate issues for the sale thereof. In order to perform this duty, the sheriff must demand it of the claimant, and if it is not delivered, the appropriate return is made by an endorsement of the fact on the bond, viz: that its condition has been forfeited. But, in the present case, an execution issued to the sheriff requiring him to make the amount of the judgment, without informing him whether the suit had been commenced by attachment, or that a replevy bond had been executed; and so far as the execution was concerned, his duty was to make the money thereon, if possible, or return that the defendant had no property within his county from which the money could be made. In the two former cases, the sheriff is informed that there is a bond, and the law points out his duty in regard to it; in the latter, he has no such information, unless it is communicated to him otherwise than by the execution. Even if the office of sheriff should continue to be filled until after the execution was issued, by the same individual who took the bond, it is not probable that, in a county where many suits were brought, he would remember the fact of its execution; much less

probable is it, that one who succeeded him in the sheriffalty should possess such knowledge.    True, it is competent for the Legislature to charge a sheriff with such knowledge, and to inflict a penalty as the consequence of ignorance ; but to induce a court so to interpret its meaning, the legislative will must be expressed in terms so explicit and imperative, as to exclude construction. This, we believe, has not been done by the act of 1833.    That statute requires the officer taking the bond to lodge the same with the clerk of the court to which the attachment is returnable. It then provides, that if the condition is forfeited, the sheriff, or other executive officer shall endorse the forfeiture thereon ; but it does not prescribe at what precise time the forfeiture takes place, whether any, or what act is necessary in order to such a result. There is much, then, left to construction.

We will not undertake to say that the defendant in attachment and surety are not bound to take notice of the determination of that suit, and if the former be cast therein, to return the specific property without any demand thereof, and upon such default a forfeiture might not be endorsed ; although no express notice has been given, or demand actually made.    This question need not be considered.    But we think that the statute is not so inflexible as to require the sheriff, *mero motu*, to go the clerk's office, obtain the bond and endorse it forfeited.    If such were the proper construction of the act, as a prudential step, the sheriff should inquire in respect to every execution returned " no property found," if the defendant's property had been attached, and a replevy bond given.    To answer this inquiry, the clerk would find it necessary to examine the papers in each of such cases.    The inconvenience of such a practice, if there were no other objection, should incline us very strongly against a construction which superinduced such a consequence.    Besides, would a mistake of the clerk, in giving the information, relieve the sheriff from liability ?

This view has led us to the conclusion, that the sheriff is not bound to make the endorsement which the statute contemplates, until he is informed, in order that he may do so, that a bond was taken and lodged in the clerk's office.    Even then, he must have reasonable time to perform this duty, and cannot be required to suspend all other business until it is done.    What we have said is decisive of the case ; and, without considering the other questions raised upon the record, we have only to add, that the judgment of the circuit court is reversed, and the cause remanded.